**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HENRY IMMANUEL,
Petitioner,

v.

UNITED STATES DEPARTMENT OF

LABOR,
Respondent.

No. 97-1987

GOVERNMENT ACCOUNTABILITY
PROJECT,
Amicus Curiae.

On Petition for Review of an Order
of the United States Department of Labor.
(96-022-ARB)

Argued: January 29, 1998

Decided: March 24, 1998

Before HAMILTON, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Remanded with instructions by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Richard Edward Condit, Washington, D.C., for Peti-
tioner. Linda Carol Arnold, UNITED STATES DEPARTMENT OF
LABOR, Washington, D.C., for Respondent. **ON BRIEF:** Marvin
Krislov, Deputy Solicitor for National Operations, Steven J. Mandel,
Associate Solicitor, William J. Stone, Counsel for Appellate Litiga-

tion, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent. Joanne Royce, GOVERNMENT ACCOUNT-ABILITY PROJECT, Washington, D.C., for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Petitioner Henry Immanuel seeks review of the final decision and order of the Administrative Review Board (ARB) of the United States Department of Labor, denying Immanuel's complaint of unlawful retaliation in violation of the Water Pollution Control Act (WPCA), see 33 U.S.C. § 1367(a). The ARB dismissed Immanuel's complaint upon the recommendation of an administrative law judge (ALJ) who conducted a hearing on Immanuel's claim. Because the ALJ abused his discretion when he denied Immanuel's request to compel the attendance of witnesses within the control of his former employer, Wyoming Concrete Industries (Wyoming Concrete), we grant Immanuel's petition for review and remand the case to the Department with instructions to remand the matter to the ALJ for further proceedings consistent with this opinion.

I.

Immanuel was hired by Wyoming Concrete on June 14, 1993 as a ready-mix cement truck driver at the company's Blades, Delaware facility, subject to the successful completion of a sixty-day probationary period. Shortly after beginning work for Wyoming Concrete, Immanuel became concerned about the improper disposal of waste water contaminated with cement byproducts and acid, excessive amounts of oil used by Wyoming Concrete trucks, and spills of motor oil at the Blades facility. Immanuel discussed these concerns with Frank Fluharty, the Blades facility manager.

On July 7, 1993, Immanuel was pouring cement for customer John Mahetta. Because he could not position his truck properly, Immanuel needed to use a chute to complete the pour but refused to help carry the chute, telling the customer that "it was not[his] job." (J.A. 403). Mahetta got angry with Immanuel because the chute was Wyoming Concrete's, yet Immanuel refused to help move it. Mahetta subsequently contacted Wyoming Concrete and complained.

On July 13, 1993, at a new construction site, Immanuel poured concrete that was too thick and piled up, instead of running around the foundation as it was supposed to. The customer yelled at Immanuel to stop pouring the concrete, telling him it was too thick. Two of the customer's employees and another Wyoming Concrete driver then had to shovel the concrete around the foundation before the truck could be successfully unloaded. The plant manager of the Wyoming Concrete Federalsburg, Maryland plant was at the site at the time of the incident and informed Fluharty about Immanuel's unsatisfactory performance.

On July 22, 1993, Immanuel poured concrete too quickly, causing the concrete to completely cover customer Fred O'Neal during the delivery. According to Immanuel, he reported this incident to Fluharty, who told him that he had been called by O'Neal but that Immanuel should not worry about it because it was no problem. However, as a result of these incidents, both Mahetta and O'Neal requested that Immanuel not be sent to unload concrete at their facilities again.

According to Wyoming Concrete President William DiMondi, he spoke with Fluharty around July 15, 1993 about the possibility of terminating Immanuel's employment. In addition, a memorandum from a ready-mix supervisors' meeting that was held on July 22, 1993 states, "Everybody should know that [Fluharty] has 2 new drivers hired in the last 30 days (Lonnie Wallace and Henry Immanuel). [Fluharty] indicated that he has made the decision to bring Lonnie on permanent full-time[.] [H]owever, he will be terminating Henry Immanuel's employment within the next week or two due to customer complaints. Any applications submitted . . . from any downstate resident drivers should be forwarded to [Fluharty] for his consideration."

3

(J.A. 437-38). Immanuel questions the authenticity of this document, stating that its appearance suggests that it may have been altered.

Although the decision to terminate Immanuel's employment had, according to Wyoming Concrete, been made, DiMondi decided to keep Immanuel as a driver until a replacement could be found because the company was very busy and needed drivers. During this time, Immanuel was restricted from working for certain clients. Beginning on July 24, 1993, Wyoming Concrete placed an advertisement for a ready-mix driver in the Delaware State News, which advertisement was intended to find a replacement for Immanuel. Although the decision to terminate Immanuel's employment had apparently been made, no Wyoming Concrete representative informed Immanuel of any performance problems or its intention to terminate his employment.

On July 25, 1993, Immanuel attended a Wyoming Concrete company picnic. While at the picnic, Immanuel distributed a letter he had prepared listing seven areas of concern to him about the conditions of employment at Wyoming Concrete. The letter was distributed to fellow employees and addressed to "Fellow Workers." (J.A. 371). Among the concerns listed were "environmental problems" including "oil in drums exposed to rain [that] has spilled onto the ground [and] the cement acid that is used on trucks to clean them[that] goes directly onto the ground." Id. The letter went on to ask what the Environmental Protection Agency (EPA) would say about the pollution. Id. In addition, the letter stated concerns about the conditions of the trucks the drivers drove, the safety of the "loader" at the plant, low wages, and the lack of sufficient health benefits. The letter then suggested that workers should get a percentage of the company's profit and ended with the suggestion that the workers unionize. Id.

At some point during the picnic, a copy of the letter was given to William DiMondi by one of the Wyoming Concrete employees. Angered, DiMondi waited until the end of the day and approached Immanuel as he was leaving the picnic with his family. The parties' accounts of this confrontation differ slightly.

According to Immanuel, DiMondi approached him while he was in his car with his wife and children, waving the letter and asking in an

4

enraged manner what the letter was about. Immanuel responded that DiMondi should read the letter, to which DiMondi responded that Immanuel was fired and crumbled up the paper. Immanuel immediately asserted that he had rights and that DiMondi could not fire him for something like his letter. According to Immanuel, DiMondi then stated that Immanuel was rehired and that he should report to work on Monday. Immanuel stated that during this confrontation, he was very nervous because DiMondi appeared to be in a rage and held his fist as if he was going to hit Immanuel. Immanuel's wife and 11-year-old daughter corroborated Immanuel's account.

According to DiMondi's explanation of this incident, he approached Immanuel at the end of the picnic to express his disappointment that Immanuel had chosen the company picnic as the time to express his concerns without first discussing them with management. DiMondi denied that he fired Immanuel at the time but stated that when Immanuel told him that he could not be fired because he had distributed the letter, DiMondi replied that, in fact, he could fire him.

During the week following the picnic, July 26-30, 1993, DiMondi contacted Mahetta and O'Neal in order to verify personally the complaints which had been relayed to him by Fluharty. In addition, DiMondi requested that they put their complaints in writing. According to DiMondi, he feared that Immanuel would initiate litigation based on his statement that his letter protected him from being fired, and after consulting with counsel, DiMondi thought it was necessary to justify the decision to terminate Immanuel's employment with Wyoming Concrete.

On July 30, 1993, DiMondi and Fluharty met with Immanuel. Immanuel was invited to discuss his grievances, and Fluharty reviewed a performance evaluation/status determination form, which rated Immanuel with respect to personal traits and work performance. The evaluation form concluded that Immanuel should not be converted from a probationary employee to a full-time employee, and DiMondi informed Immanuel that he was being terminated for six reasons, including customer complaints, misrepresentations on his employment application, his inability to work a full shift, and his failure to maintain vehicle inspection forms in his truck.

5

Following the termination of his employment, Immanuel sent letters and complaints to a number of state and federal agencies, including the Delaware Department of Natural Resources and Environmental Control, the National Labor Relations Board, the Occupational Safety and Health Administration, and the EPA. On September 15, 1994, Immanuel was advised by the EPA that he should report his termination to the Secretary of Labor (Secretary). The next day, on September 16, 1994, Immanuel submitted a letter of complaint to the Department of Labor's Wage and Hour Division. In the letter, Immanuel alleged that he had been discharged in retaliation for engaging in protected activity in violation of the whistle-blower provisions of the WPCA.

The Department of Labor subsequently scheduled a hearing on Immanuel's complaint before an ALJ. On two occasions prior to the hearing, during February 1995, Immanuel, acting pro se, requested a number of subpoenas in order to compel certain witnesses to appear at the hearing on his behalf. In the second request, dated February 14, 1995, Immanuel named the individuals he wished to subpoena. Several of these individuals were employees of Wyoming Concrete, including management personnel. On March 5 and April 5, 1995, respectively, the ALJ denied Immanuel's requests, acknowledging that Immanuel wished to compel certain witnesses to appear at the hearing but stating that he did not have the authority to issue subpoenas in a proceeding alleging a violation of the WCPA whistle-blower provision. In ruling on Immanuel's request, the ALJ relied principally on a Department of Labor ruling in which the Secretary had opined that under the Administrative Procedure Act (APA), the Secretary and the ALJ only had the authority to issue subpoenas authorized by law and that no such authority existed in the employee protection provision of the Energy Reorganization Act (ERA). See Malpass v. General Elec. Co., 1994 WL 897244, at *9 (Dep't of Labor Dec. & Order March 1, 1994). Although the ALJ recognized that Immanuel sought relief under the WPCA, not the ERA, he stated that the rationale of Malpass nevertheless applied with equal force to Immanuel's request.

When the hearing began on May 2, Immanuel, then represented by counsel, again requested that the ALJ issue subpoenas to compel witnesses to appear on his behalf. Specifically, Immanuel stated that some of the key witnesses to his case were witnesses that were

6

employees of Wyoming Concrete who had knowledge about the details of his case, particularly when DiMondi decided Immanuel should be fired, but who were unwilling to testify voluntarily. Immanuel argued that, in their absence, he could not get a fair hearing. Immanuel also argued that denying him the right to compel certain witnesses to appear denied him his due process right to a fair hearing in violation of the United States Constitution. In response, the ALJ noted that he had already ruled on Immanuel's subpoena requests and that he had denied those requests on the basis that he did not have the authority under the WPCA to issue subpoenas. With respect to Immanuel's constitutional due process argument, the ALJ stated that he had relied on the Secretary's earlier <u>Malpass</u> decision in denying Immanuel's request and that Immanuel would have to pursue his constitutional argument before the Secretary.

The hearing then proceeded, and on October 24, 1995, the ALJ issued his recommended decision and order. The ALJ recommended the dismissal of Immanuel's claim on the basis that Immanuel's complaint to the Wage and Hour Division was untimely. The ALJ went on to conclude that even if Immanuel's claim was timely, Wyoming Concrete had shown by a preponderance of the evidence that the decision to terminate Immanuel's employment was made for legitimate, non-retaliatory reasons and before Immanuel engaged in protected activity by distributing his letter at the company picnic.

Immanuel subsequently appealed the ALJ's decision to the ARB. On May 28, 1997, the ARB issued a final decision and order, dismissing Immanuel's complaint. In its decision, the ARB disagreed with the ALJ that Immanuel's complaint was untimely but agreed with the ALJ that, while Immanuel had engaged in protected activity under the WPCA, he had failed to prove by a preponderance of the evidence that his termination was caused by his protected activity, rather than by legitimate business reasons. The ARB declined to decide whether Immanuel was denied his constitutional due process rights, stating that it did not have jurisdiction to consider constitutional questions. Immanuel now petitions for review of the ARB's decision.

II.

We review a decision of the Secretary of Labor for whether it is supported by substantial evidence and whether it is arbitrary, capri-

cious, an abuse of discretion, or otherwise not in accordance with the law. See 5 U.S.C. § 706; Blackburn v. Martin, 982 F.2d 125, 128 (4th Cir. 1992); Leitman v. McAusland, 934 F.2d 46, 48 (4th Cir. 1991) (setting forth the standard of review of administrative agency decisions under the APA). "Substantial evidence consists of `such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Blackburn, 982 F.2d at 128; see also Leitman, 934 F.2d at 51. We review questions of law de novo. See Bechtel Constr. Co. v. Secretary of Labor, 50 F.3d 926, 931 (11th Cir. 1995).

III.

Immanuel first contends that the ALJ erred when he concluded that he did not have the power to compel certain witnesses to appear on behalf of Immanuel at the hearing on his complaint. Although we agree with the ARB that the ALJ did not have the authority to issue subpoenas to compel the appearance of witnesses, we believe that the ALJ nevertheless had the authority to compel the appearance of all witnesses within the control of Wyoming Concrete and that he erred when he failed to grant Immanuel's request to compel the appearance of those witnesses.

With respect to whether an ALJ has the authority to issue subpoenas, the APA provides for the issuance of subpoenas in the context of administrative hearings where "authorized by law." See 5 U.S.C. § 555(d) (agency subpoenas "authorized by law shall be issued to a party on request"); 5 U.S.C. § 556(c)(2) (providing that, subject to published rules of the agency and within its powers, employees presiding at administrative hearings may issue subpoenas "authorized by law"). Thus, unless the WPCA specifically provides for the issuance of subpoenas by administrative hearing officers, the ALJ does not have the authority to issue them.

The whistle-blower provision of the WPCA is set forth at 33 U.S.C. § 1367(a).**1** Subsection (b) of 33 U.S.C. § 1367 provides that

_____

**1** This provision provides:

> No person shall fire, or in any other way discriminate against, or
> cause to be fired or discriminated against, any employee or any

8

an employee who believes that he has been "fired or otherwise discriminated against by any person in violation of subsection (a)" may apply for review of such firing or alleged discrimination with the Secretary within thirty days of the alleged violation. See 33 U.S.C. § 1367(b). Section 1369(a) of Title 33 contains the authorization for the issuance of subpoenas in the context of administrative procedures and judicial review. See id. § 1369(a). This provision authorizes the issuance of subpoenas "[f]or purposes of obtaining information under section 1315" or "carrying out section 1367(e)." Id. § 1369(a)(1). In addition, 33 U.S.C. § 1369(a)(2) permits the district courts of the United States to issue subpoenas for attendance and testimony of witnesses "for purposes of obtaining information under sections 1314(b) and (c)." Id. § 1369(a)(2). These provisions, then, authorize the issuance of subpoenas for purposes of obtaining information under 33 U.S.C. §§ 1314(b), 1314(c), 1315, and 1367(e). Absent from this authorization, however, is the authorization to issue subpoenas for purposes of gathering information under 33 U.S.C. § 1367(a), the whistle-blower provision. Thus, while a hearing officer may issue subpoenas for purposes of certain sections of the WPCA, it appears that Congress did not intend to authorize the issuance of subpoenas for purposes of carrying out other sections of the Act, including the whistle-blower position. See Oliver v. Hydro-Vac Services, Inc., 1998 WL 4304, at *2 (Dep't of Labor Admin. Review Bd. Dec. & Order Jan. 6, 1998) (holding that there is no subpoena power granted to the Department under the whistle-blower provision of the WPCA). We, therefore, agree with the ARB that the ALJ was not authorized to issue subpoenas to Immanuel to compel the appearance of witnesses at the hearing on his retaliation claim.

Although the ALJ did not have the authority to issue subpoenas to require the attendance of witnesses as requested by Immanuel, the

_____

> authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.

33 U.S.C. § 1367(a).

9

ALJ did have the authority to grant Immanuel's request to compel the appearance of all those witnesses within the control of Wyoming Concrete. Department of Labor regulations governing adjudicatory proceedings before Department ALJs provide:

> In any proceeding under this part, the [ALJ] shall have all powers necessary to the conduct of fair and impartial hearings, including, but not limited to [the power to]:
>
> . . .
>
> (3) Compel the production of documents and <u>appearance of witnesses in control of the parties</u>.

29 C.F.R. 18.29(a) (1997) (emphasis added); <u>see also</u> 29 C.F.R. § 18.1(a) (1997) (providing that the rules of practice contained in 29 C.F.R. §§ 18.1-18.59 "are generally applicable to adjudicatory proceedings before the Office of Administrative Law Judges, United States Department of Labor"). This provision, then, provides clear authority for the ALJ to compel the appearance of all witnesses in this case within the control of Wyoming Concrete. Immanuel repeatedly requested that the ALJ compel the appearance of these witnesses, and he further explained why he wished to call them as witnesses. While Immanuel technically requested "subpoenas," the ALJ recognized that the import of his request was to require that they appear as witnesses at the hearing, and the ALJ apparently misunderstood the extent of his authority when he denied Immanuel's request in its entirety. Because the ALJ misunderstood his authority to compel the appearance of certain witnesses requested by Immanuel, he committed an error of law and, by definition, abused his discretion. <u>See Koon v. United States</u>, 116 S. Ct. 2035, 2047 (1996).**2**

_____

**2** Immanuel also argues that the ALJ's refusal to compel the appearance of witnesses within the control of Wyoming Concrete violated his procedural due process rights under the United States Constitution. Because we hold that the ALJ erred by denying Immanuel's request to compel the appearance of these witnesses at his hearing, necessitating a remand, we need not address Immanuel's alternative argument that the ALJ's failure to compel witnesses violated his constitutional due process rights.

IV.

We, therefore, agree with Immanuel that the ALJ erred when he failed to compel the appearance of witnesses within the control of Wyoming Concrete as authorized by 29 C.F.R. § 18.29(a)(3). Accordingly, we grant Immanuel's petition for review and remand this case to the Department with instructions that the matter be remanded to the ALJ for further proceedings consistent with this opinion.

<u>REMANDED WITH INSTRUCTIONS</u>

11