Carolyn GADDY, Plaintiff–Appellee,

v.

ABEX CORPORATION and Miguel Solis, Defendants–Appellants.

No. 88–3119.

United States Court of Appeals, Seventh Circuit.

Argued April 19, 1989.

Decided Sept. 6, 1989.

Rehearing Denied Oct. 16, 1989.

Randall D. Schmidt, Mandel Legal Aid Clinic, Carolyn Gaddy, Chicago, Ill., for plaintiff-appellee.

Michael D. Freeborn, Elizabeth D. Sharp, Margaret S. Garvey, Freeborn & Peters, Chicago, Ill., for defendants-appellants.

Before CUMMINGS, POSNER and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

The defendants, Abex Corporation and Miguel Solis, appeal from a decision in favor of plaintiff, Carolyn Gaddy, on her Title VII (42 U.S.C. § 2000e *et seq.*) claim. Plaintiff initially filed a complaint alleging discrimination on the basis of race and sex under both Title VII and 42 U.S.C. § 1981. Plaintiff's claims of race discrimination were tried to a jury. At the close of plaintiff's case, defendants moved for a directed verdict on plaintiff's race discrimination claims which was granted by Judge McMillen and is not challenged by plaintiff here on appeal. Plaintiff's sex discrimination claims were tried to Judge McMillen, after which he entered judgment in favor of the defendants. Plaintiff filed a motion to amend findings of fact and conclusions of law under Rule 52(b), or, in the alternative, for a new trial pursuant to Rule 59(a)(2). Defendants then filed a motion for fees pursuant to Rule 11 against plaintiff, her individual attorneys and the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School. During the pendency of these motions, Judge McMillen retired and the case was reassigned to Judge Prentice H. Marshall. Judge Marshall granted plaintiff's motion for new trial on the sex discrimination claims and denied defendants' motion for Rule 11 sanctions without prejudice to renew it at the conclusion of the new trial.

After the second bench trial, Judge Marshall ruled in favor of the plaintiff on her sex discrimination claims awarding her relief of reinstatement, back pay, lost overtime pay, prejudgment interest, lost seniority, attorneys' fees and costs, and an injunction against the defendant from taking any future retaliatory action against plaintiff for filing this suit. Defendants challenge the propriety of Judge Marshall's rulings on the post-trial motions, as well as the judgment in favor of the plaintiff. We

affirm in part, reverse in part and remand for further proceedings.

## I. Facts

Abex is a manufacturer of composition brake shoes for railroad cars. Gaddy was hired by Abex on June 14, 1976, as a bargaining unit laborer and promoted to a non-bargaining unit position of quality control technician on September 17, 1977. Prior to her layoff, Gaddy was employed as part of a seven employee process control department which consisted of a "mix" side where raw materials were combined, in which Gaddy worked, and a "press" side where the mix was formed into brake shoes. By September 1982, four male employees in the process control department were laid off leaving Gaddy and two male employees, O.D. Woods and Roberto Iniquez remaining in that unit.

The second defendant in this case, Miguel Solis, was Gaddy's supervisor in quality control. One of Solis' duties required him to determine which employees would be given overtime work. This was apparently in his discretion, although the evidence at trial indicated it was Abex's general policy to divide overtime evenly among employees. Gaddy alleges that Solis discriminated against her on the basis of sex in the distribution of overtime hours as evidenced by his statement that Gaddy should not work overtime because she was a mother and her children needed her at home. On appeal, defendants challenge only the amount of overtime awarded, but not their liability for overtime. Gaddy also alleges that Solis sexually harassed her on two occasions.

In August of 1982, the plant superintendent, Thomas Boyd suffered debilitating medical problems and was replaced by Stephen Angstadt. Due to declining business, Angstadt was required to lay off another employee in Gaddy's department and chose Gaddy after conferring with Solis. No one was hired to replace the plaintiff and the plant was later sold by Abex to ABC Rail in July of 1987. Gaddy filed a charge of employment discrimination on the basis of her race and sex with the Equal Employment Opportunity Commission ("EEOC") on November 12, 1982 and received her right to sue letter on August 4, 1983. This suit followed on October 27, 1983.

## II. New Trial Order

Judge McMillen retired following the first trial of plaintiff's claims before ruling on plaintiff's motion to amend the findings of fact or alternatively for new trial and defendants' motion for Rule 11 sanctions. Prior to retiring, however, Judge McMillen referred the motion for fees to a magistrate with the following explanation:

As the attorneys have been advised, the attorneys representing the defendants performed some legal services for me while this case was pending which were not charged for and which were concluded before trial. I consider the nature of the services to be privileged, but the fact remains that I was provided with valuable services for which I am morally indebted to the defendants' attorneys. On the other hand, I have been acquainted with the plaintiff's attorney, Mrs. Kamp, for some time, have great respect for the work she and the Mandel Legal Aid Clinic are engaged in (which my daughter also participated in as a student at the University of Chicago Law School), and would have some conflict of interest in deciding contested issues of fact which might be based upon her credibility.

(R.99) Both parties acknowledge that Judge McMillen disclosed his relationship with the defendants' law firm on at least one other occasion prior to trial, although plaintiff never filed a motion for his recusal nor did she raise the issue of disqualification in her motion for a new trial or amended findings of fact. Defendants, however, contend that Judge Marshall granted plaintiff's motion for new trial solely on the ground that Judge McMillen should have recused himself because of the appearance of impropriety as provided under 28 U.S.C. § 455(a) even though no motion for recusal existed.

Plaintiff proposes two sources of authority for Judge Marshall's decision to grant a new trial. Rule 59 of the Federal Rules of

Civil Procedure allows a judge to grant a new trial in his discretion, while Rule 63 allows a judge who is required to perform judicial duties in a case in which findings of fact and conclusions of law are already filed by a previous judge to grant a new trial in the succeeding judge's discretion if unable to perform those duties for failure to preside over the trial. In explanation of the order granting a new trial Judge Marshall stated he felt it inappropriate to rule on plaintiff's motion to amend findings of fact when he did not preside at the trial, although he stated that the factual findings were contradictory on their face. Specifically, Judge Marshall noted, Judge McMillen had found no evidence to link Miguel Solis to the decision to lay off plaintiff despite the fact that the layoff notice for Gaddy was signed by Solis. Secondly, Judge McMillen found that Gaddy was only equally qualified as the two male employees who were not laid off, while it was uncontested that Gaddy had trained the two other employees and was the informal leader of their unit. Finally, Judge McMillen found that Gaddy had been terminated based on her level of seniority while the defendant had admitted that seniority was not a factor in lay-offs for non-bargaining unit employees. Judge Marshall further concluded it would be inappropriate to rule on the defendants' request for sanctions when he was unable to observe the credibility of the parties in the trial below.

■ In reviewing a grant of a new trial, we will not substitute our judgment for that of the district judge absent a clear showing of an abuse of discretion. *Hahn v. Becker*, 588 F.2d 768, 771 (7th Cir.1979). An order for a new trial is not an abuse of discretion if supported by even a single ground. *Juneau Square Corp. v. First Wis. Nat. Bank*, 624 F.2d 798, 809 (7th Cir.1980). While we are somewhat disturbed by a district judge, other than the trial judge, occupying essentially the same vantage point as this Court in reviewing findings of fact, concluding that he has "scant confidence" in the findings and granting a new trial, we cannot say that it was an abuse of discretion to do so in the unusual circumstances of this case.

In granting the new trial, Judge Marshall did not articulate with clarity the precise grounds upon which he relied, instead citing generally the above inconsistent findings of fact and the disclosed conflict of interest of Judge McMillen, explaining, "When all of these factors are taken into account, we have concluded that the case should be retried." Judge Marshall then explained that "we could deny the post-trial motion and place the Court of Appeals in the position we are in now in reviewing the record. But we have further obligations in the matter with respect to the [defendants'] Rule 11 application for fees...." The reason on which he most clearly relied was the inability to determine whether the action was frivolous for the Rule 11 motion for sanctions without having presided at the trial and observed the parties and their counsel.

Rule 11 countenances a two-prong inquiry into the attorneys' conduct: (1) a subjective element, whether the action was filed for any improper purpose and (2) whether the attorney failed to make an objectively reasonable inquiry prior to bringing the action. *Mars Steel Corp. v. Continental Bank*, 880 F.2d 928, 931 (7th Cir.1989). Determining the appropriateness of Rule 11 sanctions is a fact-intensive inquiry, "as much a matter of 'fact' as is the purpose behind the paper." *Mars*, at 932. Because of the fact-bound nature of a Rule 11 inquiry, this Court recently joined six other courts of appeals in adopting a deferential standard of review for Rule 11 decisions. *Mars, supra.* When Judge Marshall received this case, he occupied the same distant relationship to the facts and record as this Court does upon review, with the distinction that Judge Marshall was required to make the initial Rule 11 determination on an unfamiliar case. Accordingly, Judge Marshall found himself unable to render a decision on the Rule 11 motion without having viewed the factual development of the case first-hand. Rule 63 elicits a very broad subjective standard to order a new trial "if such other judge is satisfied that he cannot perform those duties because he did not preside at the trial or for

any other reason," to prevent any judge who does not feel capable of performing the duties required to order a new trial. Such a flexible standard was probably perceived as the wisest approach to address the varied and exigent circumstances which often accompany the unexpected death or retirement of a judge. While it is difficult to accept as a general rule Judge Marshall's position that a succeeding judge is unable to hear a Rule 11 motion without granting a new trial, it was certainly within his discretion to grant a new trial based on his understanding of the duties required of him.

### III. Plaintiff's Title VII Case

At the second trial, Judge Marshall ruled in favor of the plaintiff, finding that defendants had discriminated against her on the basis of her sex in the distribution of overtime hours and in their decision to lay her off. In so holding, Judge Marshall credited the testimony of Gaddy regarding two incidents of sexual harassment by Solis. The first incident occurred in the lunchroom of the plant where Gaddy was seated at a picnic table completing a report from her previous shift. Solis entered and seated himself straddle-legged next to Gaddy, placed his arm around her and whispered in her ear that "he needed something", to which Gaddy responded that she didn't understand. Solis then whispered "you know what I mean" and Gaddy changed the subject. The second incident occurred when Gaddy received an urgent phone call at the plant in Solis' office. At the time, Gaddy was showering after her shift. She put on a disposable pair of coveralls and entered Solis' office to take the phone call. Gaddy testified that Solis asked the other men in his office to leave and after Gaddy had finished the phone call, asked her to unzip the coverall. Gaddy rebuked this and a second request to do so and left Solis' office. At trial, Solis did not deny the actual encounters but did refute Gaddy's interpretation of his statement in the lunchroom and denied having asked Gaddy to unzip her coverall.

Judge Marshall also discredited the testimony of Angstadt as to the reason for Gaddy's termination, concluding that "Angstadt's explanations were all over the lot." Initially the defendants had taken the position before the EEOC and in their answer to plaintiff's complaint that seniority played no role in the termination of Gaddy. However, during trial Angstadt testified that if qualifications were equivalent, the least senior employee such as Gaddy would be laid off first. Angstadt also testified that Solis' signature on Gaddy's termination notice did not indicate that Solis played any role in her termination but merely represented a second signature required by the form.

### A. Credibility Determinations

Defendants challenge on appeal Judge Marshall's assessments of plaintiff's credibility as clearly erroneous. Specifically, they contend that Gaddy's credibility is belied by her failure to complain earlier of discrimination when she was the subject of preceding layoffs, the alleged falsity of her statement to the EEOC that she had "never received any complaints regarding performance or productivity", and purportedly inconsistent testimony between the two trials as to her failure to light a "continuous cure" oven. Defendants also assert that Judge Marshall erroneously discredited the testimony of Angstadt regarding the reasons for Gaddy's layoff and the participation of Solis in that decision.

Assessing the credibility of witnesses is of course a matter for the trial judge and will not be disturbed on appeal unless clearly erroneous. *Anderson v. City of Bessemer City N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Judge Marshall credited plaintiff's account of two sexual harassment incidents involving Solis based on the consistency of her explanations of the incidents and the fact that she reported the harassment immediately following her termination from Abex. On the other hand, Judge Marshall found the testimony of Angstadt to be inconsistent and contradicted by previous statements from Abex. These determinations fall far short of being clearly erroneous.

The evidence in the record is based almost entirely on the testimony of the adverse parties with the exception of the written termination notice and the EEOC file. There is therefore no objective evidence to contradict the credibility determination made by Judge Marshall. The defendants' assertion that plaintiff testified inconsistently with her report to the EEOC is greatly overstated. Although plaintiff admitted having received a formal reprimand for failing to wear safety goggles in the plant, she testified that she did not consider the reproval to affect her "productivity or performance" because she was standing in the doorway to the plant when the reprimand was cited. She therefore replied in the negative to the EEOC's inquiry as to the receipt of any complaints affecting her productivity. Defendants also characterize Gaddy's testimony regarding an incident in which the lighting of a continuous cure oven was delayed for two hours, resulting in a two hour back log in the rest of the plant, as internally inconsistent. At the first trial, Gaddy testified that she had failed to light the continuous cure oven on the day in question although asked to do so and later testified at the second trial that it was ordinarily Roberto Iniguez's duty to light the oven. This testimony is not internally inconsistent. As explained in plaintiff's brief, Iniguez ordinarily was required to light the continuous cure oven, but on the day in question, Angstadt had asked Gaddy to light the oven which she admittedly forgot to do, although her mistake did not lead to a formal reprimand. As to Gaddy's failure to file discrimination charges based on her prior layoffs, Judge Marshall concluded that this final layoff was distinguished in light of the sexual harassment incidents by Solis and his role in her layoff. Judge Marshall's conclusion that this layoff was distinguishable is certainly reasonable since Gaddy did not allege in this action any sexual harassment or discrimination in overtime hours prior to other layoffs. The record contains more than sufficient evidence to support Judge Marshall's credibility determinations.

As to the credibility of Angstadt, his testimony that Gaddy was laid off based on her lower seniority and the fact that her skills were equivalent to those of the other department workers was contradicted by his testimony that he did not consult Gaddy's personnel file to verify her performance evaluations in making the decision to terminate her employment prior to the other members of her department. Further, his testimony that seniority played a role in his decision to lay off Gaddy was contradicted by Abex's own explanation that seniority "is not a governing factor when lay-offs occur" in the salaried and hourly non-bargaining units. (Doc. 192, D. Exh. 16). Judge Marshall's determination that Angstadt's testimony was incredible is not erroneous in light of this evidence.

Defendants also contend on appeal that Judge Marshall exaggerated Gaddy's qualifications relative to her co-workers. Judge Marshall never specifically found Gaddy to be superior to her co-workers, but simply stated that Boyd, Angstadt's predecessor, had characterized her as a superior employee while Angstadt thought less highly of her. It is sufficient that Gaddy was meeting the reasonable expectations of her employer but was chosen for lay-off based on her sex, rather than any legitimate business justification. *Matthews v. Allis–Chambers,* 769 F.2d 1215, 1217 (7th Cir. 1985). Defendants do not dispute that Gaddy was at least as qualified as the two men in her unit, that she had trained the men in her unit, and that she earned the highest salary in her unit. In light of this evidence Judge Marshall's assessment of her qualifications was not clearly erroneous.

### B. Employment Statistics

As a final matter in their litany of challenges to Judge Marshall's decision on liability defendants assert briefly that Judge Marshall erroneously drew the conclusion from employment statistics at Abex that Abex exhibited an anti-female bias and that women were the first to be laid off when layoffs at the plant were necessary. The statistics on which Judge Marshall relied revealed the following: in March 1980, there were no female and twenty-seven

male skilled workers, no female and one hundred male semi-skilled workers, and eight female and forty-eight male unskilled workers with a total work force of 181 skilled, semi-skilled and unskilled; later in March 1981, there were eight female skilled workers and three male skilled workers, no female semi-skilled out of 30 and no female unskilled workers out of 89 unskilled; in March 1982, Gaddy was the only female worker in the plant out of 79 total workers. (R. at 193, items 59–61). While Judge Marshall's treatment of these statistics was summary, the statistics were not necessary to his finding of discriminatory intent for his decision was supported by other evidence offered by plaintiff. Judge Marshall found that Solis had discriminated in his distribution of overtime hours (which defendants do not challenge on appeal), that Solis played a role in the decision to lay off Gaddy, that Solis' sexual advances were thwarted by Gaddy, and that her work was of at least equal quality relative to her co-workers as evidenced by her higher salary and her responsibility in training her co-workers.

## IV. Relief Granted

■ Finally, defendants argue that the relief awarded Gaddy by the district court is excessive. Judge Marshall ordered the reinstatement of Gaddy, full back pay with prejudgment interest, lost overtime pay and an injunction of any retaliation against Gaddy for prevailing in this case. Initially, we must agree with the defendants' assertion that Judge Marshall erroneously granted an injunction against retaliation since there was never any allegation of retaliation by defendants. Gaddy has never taken the position in any of these proceedings that defendants subjected her to retaliation for filing an EEOC charge. Therefore, the injunction is too broad in its prohibition of future retaliation, impermissibly subjecting defendants to contempt proceedings for conduct "unlike and unrelated to the violation with which [the defendants were] originally charged." *National Labor Relations Board v. Express Publishing Co.*, 312 U.S. 426, 436, 61 S.Ct. 693, 699, 85 L.Ed. 930 (1941). Abex was

charged with discriminating against Gaddy in the distribution of overtime hours and the decision to lay her off. An injunction tailored to address this conduct would be appropriate in scope.

■ Once plaintiff has established that her employment was terminated as a result of unlawful discrimination on the part of the employer, a presumption in favor of full relief arises. *Ablemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). Plaintiff must establish the amount of her damages she claims resulted from the employer's conduct thereby, shifting to the employer the burden of going forward to show that the plaintiff failed to mitigate her damages or that the damages were in fact less than plaintiff asserts. *Taylor v. Philips*, 593 F.2d 783 (7th Cir.1979). To demonstrate the affirmative defense of a plaintiff's failure to mitigate damages, the defendants must show that:

(1) the plaintiff failed to exercise reasonable diligence to mitigate his damages, and

(2) there was a reasonable likelihood that the plaintiff might have found comparable work by exercising reasonable diligence.

*Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 159 (7th Cir.1981). In order to sustain this burden defendants elicited on cross-examination of Gaddy testimony that she had received a favorable response to her inquiry for employment at Kraft Foods, in their Geneva, Illinois, plant but did not follow up the opportunity because she felt she could not afford the expense of relocating herself and her family from the south side of Chicago to Geneva. Defendants also rely on Gaddy's direct testimony that she attended cosmetology school for nine months and received training in data processing for six months, but did not attempt to secure employment in either of those fields.

As evidence of her efforts to seek employment following her layoff, Gaddy testified that she contacted over one hundred employers, used two employment agencies, answered newspaper ads and followed

leads from friends and relatives. Despite her efforts, Gaddy testified that she received no offers of employment and consequently has not earned any income since her layoff from Abex. Gaddy testified and introduced evidence to establish her hourly rate and the number of regular and overtime hours she worked while employed at Abex. Judge Marshall awarded Gaddy a total of $118,270.38 in back pay for 71 months based on an average monthly wage of $1665.78, inclusive of the overtime Judge Marshall determined Gaddy would have received during her employment absent the defendants' discrimination.

■ Although defendants contend that Gaddy should not be awarded back pay for the fifteen months in which she attended school part-time, they have failed to produce any evidence to indicate that Gaddy had suspended her efforts to search for work. She therefore differed from the plaintiff in *Miller v. Marsh*, 766 F.2d 490 (11th Cir.1985), a full-time law student found unavailable for alternative employment while pursuing higher education. Here, as in *Hanna v. American Motors Corp.*, 724 F.2d 1300 (7th Cir.1984), defendants failed to produce any evidence to contradict plaintiff's testimony that she remained at all times "ready, willing, and available to accept employment" during the time she pursued her education. *Hanna*, at 1308. Similarly, defendants failed to produce any probative evidence that if Gaddy had pursued her opportunities at Kraft, there was a reasonable probability that she would have received a job offer. Therefore, in awarding Gaddy back pay Judge Marshall's decision to discredit the defendants' allegations that plaintiff failed to mitigate her claims and was unavailable for employment during her education was not an abuse of discretion.

■ Defendants also contend that reinstatement is unwarranted in light of the sale of the plant to ABC Rail and that the award of back pay should be terminated as of the date the plant was sold in July 1987, or at least reduced by two weeks per year to account for the average amount of time in which Gaddy would have been on layoff due to periodic slow downs in work orders at the plant. Although the sale of a plant often results in the restructuring and the effective elimination of former positions, here the evidence reveals that the remaining two employees in Gaddy's department continued their employment in the same positions with ABC Rail following the sale of the plant. At the time of Gaddy's layoff, her department was reduced from three positions to two. Absent the defendants' discriminatory motive, either Iniguez or Woods would have been laid off while Gaddy would have been retained and able to continue her employment with ABC Rail as did Iniguez and Woods following her termination of employment. The back pay need not be terminated as of the sale of the plant, since Gaddy could have continued her employment with ABC Rail.

■ Reinstatement with the defendant employer is warranted absent exceptional circumstances demonstrating that the position is no longer available or where a continued reduction in forces occurs. *Coston v. Plitt Theaters, Inc.*, 831 F.2d 1321, 1331 (7th Cir.1987). Here there were no additional layoffs in Gaddy's unit prior to or following the sale of the plant to indicate that she would have been laid off subsequently absent a discriminatory motive. Reinstatement is therefore presumptively appropriate. Defendants assert that no evidence has been presented to indicate that following the sale of the plant any comparable position is available for plaintiff in any of the defendant's operations although Gaddy has indicated a willingness to relocate if necessary. She is however not required to demonstrate the existence of a comparable position in the company given the presumption in her favor of full relief under Title VII. *Ablemarle*, 422 U.S. at 421, 95 S.Ct. at 2373. Since the defendants have not demonstrated the lack of any comparable position at any of Abex's locations, reinstatement is appropriate.

■ Defendants' final assertion that Judge Marshall failed to account for periods of slow down where overtime hours were not available and where the plant was closed for whole months does have merit.

The court did not acknowledge the uncontradicted testimony of Solis that the plant has been shut down entirely for periods of up to a month since 1985 due to lack of work. This was clear error. Plaintiff had the burden to demonstrate that defendants' misconduct caused her to lose all the wages she claims as back pay. The district judge assumed that plaintiff would have worked forty hours per week for the entire year, despite a history of periodic plant slow downs which required temporary layoffs of employees including Gaddy. The record, however, does not contain sufficient evidence to enable this Court to determine the periods of time in which the plant was closed and the effect on overtime hours caused by the economic slow-downs. Defendants mysteriously suggest that back pay should not exceed $1,397.83 per month but do not explain how this figure was calculated. We must therefore remand for a redetermination of appropriate damages, taking into account the periodic plant closings at Abex and later at ABC Rail in calculation of overtime hours.

The decision of the district court is affirmed in part, reversed in part and remanded for further determinations consistent with this opinion.