**Sidney WALKER, Plaintiff,**

v.

**John H. DALTON, Defendant.**

**No. Civ.A. 97CV00217 (HHK).**

United States District Court, District of Columbia.

March 10, 2000.

---

Brian C. Plitt, Washington, DC, for plaintiff.

G. Michael Harvey, Assistant U.S. Attorney, Office of the United States Attorney for District of Columbia, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

KENNEDY, District Judge.

Plaintiff Sidney Walker, an African–American employee of the Navy's Public Works Center ("PWC"), proved to an administrative law judge that the Navy had racially discriminated against him in denying him a promotion. The Navy adopted the administrative law judge's finding and agreed to provide plaintiff certain relief, including back pay. The Navy provided plaintiff approximately seventeen thousand dollars in back pay. Plaintiff filed this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"), alleging, *inter alia,* that he is entitled to additional back pay. Presently before the court is defendant's motion for summary judgment on the ground that the Navy has paid plaintiff all of the back pay to which he is entitled.[1]

### I. BACKGROUND

In 1993, plaintiff Sidney Walker applied for, and was denied, a WS–10 Maintenance Supervisor I position ("WS–10 position") with the PWC. Later that year, plaintiff filed an EEO complaint against the Navy asserting that his non-selection for a WS–10 position resulted from racial discrimination. After hearing evidence, an administrative law judge determined that the Navy had discriminated against plaintiff in denying him the WS–10 position. In 1995, the Navy adopted as its Final Decision the administrative law judge's finding that plaintiff had been discriminated against with respect to the WS–10 position. The

---

1. In that motion, defendant also moved for summary judgment on the issue of attorney's fees and costs. Pursuant to the attached or-der, the attorney's fees issue is referred to a Magistrate Judge for resolution.

Navy agreed to provide to plaintiff certain "make whole" relief including a promotion to a position that was substantially similar to the WS–10 position that plaintiff was discriminatorily denied, back pay, and attorney's fees.

In 1996, the Navy promoted plaintiff to the WS–10 level, and plaintiff held a series of WS–10 Maintenance Supervisor I positions with the PWC. The Navy also awarded plaintiff back pay at the WS–10 rate for the hours that plaintiff had actually worked from September 9, 1993 until March 19, 1996.[2] Cynthia Elliott, a Payroll Technician for the Defense Finance and Accounting Services (DFAS), calculated the award.[3] Ms. Elliott described her method as follows:

> I first obtained the records of what Mr. Walker had actually been paid for that time period. I then performed handwritten calculations determining what Mr. Walker would have been paid for each pay period if he had been a WS–10. The pay calculation includes the actual overtime, hazard differentials, Sunday and Holiday premiums and any other differentials which Mr. Walker earned for each pay period. Each pay period reflected the effective rates which were applicable at that time.[4]

Based on Ms. Elliott's calculations, defendant awarded plaintiff a total of $17,836.05 in back pay.[5]

In 1997, plaintiff filed suit in this court alleging that none of the WS–10 Maintenance Supervisor I positions that he had been given after prevailing on his EEO complaint were substantially similar to the WS–10 position that he had been denied, and that the Navy had not provided in full the back pay and attorney's fees to which

he was entitled.[6] In 1998, Judge Harold Greene heard evidence regarding the "substantially similar position" issue. Concluding that the Navy had not placed plaintiff in a substantially similar position, Judge Greene, in an order dated September 10, 1998 (the "Order"), commanded the Navy to place plaintiff in a substantially similar position.[7] On November 10, 1998, defendant filed a response to the Order in which it offered plaintiff a choice of three WS–10 positions. Plaintiff objected, stating that none of these positions was substantially similar to the position to which he was entitled. After hearing evidence, this court found that one of the positions offered was substantially similar to the position to which plaintiff was entitled, and that defendant thus had complied with the Order.[8]

## II. STANDARDS OF REVIEW

### A. Summary Judgment

Under Rule 56, a motion for summary judgment should be granted if and only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party's "initial responsibility" consists of "informing the [trial] court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

If the moving party meets its burden, the burden then shifts to the non-moving

---

**2.** Def.'s Exhibit 11 (Declaration of Cynthia Elliott).

**3.** *See id.*

**4.** *See id.*

**5.** Def.'s Statement of Facts ¶¶ 8–11.

**6.** *See generally* Complaint, Civ.A. No. 97–00217(HHK).

**7.** Civ.A. No. 97–00217(HHK) (Order filed Sept. 10, 1998).

**8.** *See* Civ.A. No. 97–217(HHK) (Order filed Nov. 30, 1999).

party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C.Cir.1987). Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322 n. 3, 106 S.Ct. 2548. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. De Novo Review v. Deferential Review

■ In determining whether defendant is entitled to judgment as a matter of law, the court must first determine whether it should give any deference to defendant's calculation of the back-pay award. Plaintiff contends that the back-pay award should be reviewed de novo, while defendant asserts that the back-pay award is agency action that should be reviewed under the deferential "rational basis" standard and upheld unless it is "arbitrary and capricious." Def.'s Mem. Support Mot. Summ.Judg. at 6. Defendant's position is based on the notion that, because Mr. Walker prevailed at the administrative level and thus brings suit only for back pay and attorney's fees, the present suit "is not a Title VII action." *Id.* Defendant's position is without merit.

Title VII has conferred upon plaintiff the right to sue and upon this court the authority to hear this suit. *See* 42 U.S.C. §§ 2000e–5, 2000e–16. The mere fact that plaintiff demonstrated at the administrative level that the Navy had discriminated against him and thus sues only for redress does not remove this case from the realm of Title VII actions. *Cf. Wilson v. Pena*, 79 F.3d 154, 157, 168 (D.C.Cir.1996) (stating, in suit challenging back pay awarded pursuant to EEOC finding of discrimination, that the plaintiff's "right to sue under Title VII had been perfected. . . ."). A Title VII suit does not stop being a Title VII suit at the remedy stage any more than a tort suit stops being a tort suit when liability is established and the only question that remains is the amount of damages.

None of the cases defendant cites supports its novel theory. Defendant relies heavily upon the Fourth Circuit's analysis in *Blackburn v. Martin*, 982 F.2d 125 (4th Cir.1992). In that case, the plaintiff sought review of a final decision of the Secretary of Labor under the Energy Reorganization Act of 1974 ("ERA"), 42 U.S.C. § 5851(c). Consistent with the ERA's review provision, the court reviewed the Secretary's decision in accordance with the portion of the Administrative Procedure Act ("APA"), codified at 5 U.S.C. § 706, that calls for "arbitrary and capricious" review. 5 U.S.C. §. 706(2)(E) (1988). In contrast, the present action was brought not under the ERA or the APA but under Title VII, and defendant has presented no convincing reason why this court should look to APA cases rather than abundant Title VII precedent in determining which standard of review to apply.

The other cases defendant cites are equally inapposite. In *McKenzie v. Calloway*, 456 F.Supp. 590 (E.D.Mich.1978), the court determined that the proper standard of review to apply to Counts I and II of the plaintiff's complaint was the "arbitrary and capricious" standard. *See id.* at 593–594. Neither of those Counts was based upon Title VII, however, and the court expressly stated that the standard of review that applied to Count III of the complaint—the only Count based upon Title VII—was not at issue. *See id.* at 593–94 & n. 2. Similarly, in *Murray v. United States Department of Justice*, 821 F.Supp. 94 (E.D.N.Y.1993), the only other case cit-

ed by defendant that involved a Title VII claim, the court expressly stated that it "must review the discrimination claim de novo ... and the non-discrimination claim on the administrative record." *Id.* at 101. The court then analyzed the plaintiff's Title VII discrimination claim de novo. *See id.* at 101–08.

■ Far from supporting defendant's position, Title VII precedent substantially undermines it. It is well-established that federal employees are entitled to a trial de novo of Title VII claims heard at the administrative level. *See, e.g., Chandler v. Roudebush,* 425 U.S. 840, 841, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976) (holding that Title VII, as amended, "gives federal employees the same right to a trial de novo of employment discrimination claims as 'private sector' employees enjoy ...."); *see also Williams v. Bell,* 587 F.2d 1240, 1244 (D.C.Cir.1978) (stating that *Chandler* "establish[ed] definitively that Title VII suits by federal employees are to proceed in the district courts by trial de novo."). Thus, had plaintiff been *unable* to establish at the administrative level that defendant discriminated against him, plaintiff would now be entitled to a trial de novo of his claim and, if successful, a judicial determination of the back pay and attorney's fees to which he is entitled. Nevertheless, defendant contends that because plaintiff *won* at the administrative level, he is entitled to *less judicial protection*—that he must take whatever back pay and attorney's fees defendant wishes to give him, so long as defendant's award is not "arbitrary and capricious." If this proposition were accepted, a plaintiff who prevailed at the administrative level would be in a less advantageous position than a plaintiff who lost at the administrative level. This would turn reason on its head. Defendant's award of back pay will be reviewed de novo.

9. Plaintiff initially objected to the Navy's method of calculating the back pay awarded for hours worked and the Navy's initial failure to provide interest on the back pay award.

## II. ANALYSIS

■ The purpose of Title VII relief is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle v. Moody,* 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). In calculating a back-pay award, "[a] court must, 'as nearly as possible, recreate the conditions and relationships that would have been, had there been no unlawful discrimination.'" *Berger v. Iron Workers Reinforced Rodmen, Local 201,* 170 F.3d 1111, 1119 (D.C.Cir.1999) (quoting *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 372, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). Plaintiff contends that defendant's award of back pay is inadequate under this standard because defendant has not correctly calculated the period for which back pay is owed and has not paid plaintiff for the overtime that he would have worked if he had not been discriminatorily denied the promotion to WS–10 Maintenance Supervisor.[9] Each contention will be addressed in turn.

### A. The Pertinent Time Period

There are two areas of dispute with respect to the time period for which defendant owes plaintiff back pay. First, although the parties agree in principle that plaintiff is entitled to back pay for the period beginning when, in the absence of discrimination, plaintiff would have been promoted to a WS–10 position, and ending when plaintiff was finally promoted to a WS–10 position, the parties disagree as to the actual dates defining this period. Plaintiff claims that this period ran from September 19, 1993 to April 1, 1996. Pl.'s Mem. in Opp. to Def.'s Mot.S.J. at 17 & Walker Decl. of 8/16/96 ¶ 5 (contained in Def.'s Mem. in Supp. of Mot.S.J. at Exh. 9). Defendant contends that this period ran from September 9, 1993 through May

It is the court's understanding, based upon the papers submitted and the parties' statements at the January 7, 2000 hearing, that these issues have been resolved.

30, 1996, and that plaintiff has received back pay for this period. Def.'s Reply at 5.

The court finds that plaintiff has failed to raise a genuine issue of material fact regarding the dates defining this time period. Defendant states that the time period began ten days before plaintiff estimates it began. Although plaintiff is more likely right on this issue, since plaintiff's date is consistent with the administrative record, there is no reason for plaintiff to press the point, as defendant's calculation provides ten days' additional back pay. As for plaintiff's argument that the pertinent end date was April 1, 1996, rather than May 30, 1996, plaintiff's only support is his affidavit in which he states: "I only began to receive full pay for the promotion at issue on *about* April 1, 1996. Therefore, my back pay period must be calculated for the 31 month time period from 9/19/93 to *about* 4/1/96." Walker Decl. of 8/16/96 ¶ 5 (Def.'s Mem. Support Mot.S.J. at Exh. 9) (emphasis added). It is obvious that May 30, 1996, is "about" April 1, 1996, and that this affidavit is insufficient to raise a genuine issue of material fact sufficient to preclude summary judgment on the issue of the dates defining this portion of the back-pay period.

■ The second area of contention with respect to the time period for which defendant owes plaintiff back pay involves a disagreement in principle. Plaintiff contends that defendant's back pay liability did not end when plaintiff was promoted to a WS–10 position, but rather continued until defendant offered plaintiff a WS–10 position that was substantially similar to the position that he was denied due to discrimination. This position was raised for the first time in Mr. Walker's Opposition to Defendant's Motion to Quash Subpoenas and was discussed at the hearing held in this matter on January 7, 2000. At that hearing defense counsel argued that plaintiff is not entitled to any back pay for the period after the WS–10 Maintenance Supervisor I position was abolished in September 1996.

■ Having considered the arguments advanced by the parties and relevant precedent, the court concludes that defendant's liability for back pay ended not when the WS–10 position was abolished, but rather when plaintiff was finally offered a substantially equivalent position. It would be inconsistent with the broad remedial goals of Title VII to hold that a defendant could terminate its liability for back pay simply by choosing to eliminate the position for which a plaintiff had applied, without offering the plaintiff a substantially similar position. In this case, the PWC chose to eliminate the WS–10 position. Substantially similar positions continued to exist with the PWC's Code 580 Crew, and it was within the PWC's power to place plaintiff in one of those positions. Mr. Ganoe, the selectee for the WS–10 position, was placed in one of these positions. It is reasonable, albeit imprecise, to look to the career of the selectee in determining what plaintiff's career path might have been in the absence of discrimination. *See Brown v. Marsh,* 713 F.Supp. 20, 22 (D.D.C.1989), *aff'd sub nom. Brown v. Secretary of the Army,* 918 F.2d 214 (D.C.Cir.1990). Under these circumstances, it cannot be said that sufficient evidence supports the notion that, in the absence of discrimination, plaintiff's employment with the PWC would have ended when the WS–10 position was eliminated, and plaintiff's back-pay award thus will not be terminated as of that date. *See Gaddy v. Abex Corp.,* 884 F.2d 312, 319 (7th Cir. 1989) (declining to terminate back pay award on date when the defendant's plant was sold because other plant employees' work histories indicated that the plaintiff's employment could have continued after that date had the defendant not discriminated against the plaintiff); *cf. Blackburn v. Martin,* 982 F.2d 125, 129 (4th Cir.1992) (rejecting the plaintiff's contention that he was entitled to back pay after the project on which he had worked was terminated

where "[a]mple evidence indicate[d] [the defendant] would not have retained [the plaintiff] beyond the end of the project.").

Having determined that the elimination of the WS–10 position for which plaintiff had applied did not end defendant's liability for back pay, the court turns to the question whether any other event ended defendant's liability for back pay. After considering the record of the case, the court concludes that defendant's liability for back pay ended on the date when but for plaintiff's own conduct, plaintiff would have been placed in a substantially similar position to the position discriminatorily denied. To be precise, defendant's liability for back pay ended on November 10, 1998, the date on which defendant filed its Response to the Court's September 10, 1998 Order ("Response"). In the Response, defendant offered plaintiff three WS–10 positions, including a position with the PWC's Code 580 Crew. On December 10, 1998, Plaintiff filed a Certificate of Noncompliance, stating defendant had not complied with Judge Greene's Order to place plaintiff in a substantially similar position to the position denied. After a year of litigation, this court concluded that the position with the Code 580 Crew was substantially similar to the position that plaintiff had been discriminatorily denied. *See* Civ.A. No. 97–217(HHK) (D.D.C.Mem. and Order filed Nov. 30, 1999). Thus, had he immediately accepted defendant's offer, plaintiff could have been placed in a substantially similar position as of November 10, 1998, and he is not entitled to back pay after that date.

For the foregoing reasons, the court concludes that plaintiff is entitled to back pay from September 19, 1993 to November 10, 1998. Plaintiff has been compensated at the WS–10 level for the hours that he actually worked during that time period. The only question that remains is whether plaintiff has been compensated for the overtime that he would have worked during that time period had he been placed in

the WS–10 position or a substantially similar position.

## B. Overtime

■ It is appropriate for a district court to consider overtime in calculating a back-pay award. *See, e.g., Berger v. Iron Workers Reinforced Rodmen, Local 201,* 170 F.3d 1111, 1128 n. 6. (D.C.Cir.1999). In determining how many hours of overtime plaintiff would have worked in the absence of discrimination, the court has divided the back-pay period into two parts. The first time period, which is the subject of Defendant's Motion for Summary Judgment, runs from the date that plaintiff would have been placed in the WS–10 position had he not been discriminated against to the date when plaintiff was actually placed in a WS–10 position. The second time period runs from the end of the first time period to the date when defendant offered plaintiff a substantially similar position; during this time period, plaintiff was employed by the PWC at the WS–10 level.

### 1. September 19, 1993 to May 30, 1996

Defendant has moved for summary judgment on the ground that plaintiff has been paid all of the back pay to which he is entitled for this time period. Defendant contends that plaintiff has already received compensation at the WS–10 grade for the overtime hours that he actually worked during this time period. Defendant further argues that the notion that plaintiff would have worked additional overtime hours had he been promoted is purely speculative. Defendant contends that the only two benchmarks that this court can properly use in determining how much overtime plaintiff would have worked had he not been discriminated against are (1) the number of hours that plaintiff actually worked, and (2) the number of hours that the Mr. Ganoe, the Navy's selectee, worked. Defendant states that Mr. Ganoe actually worked *fewer* overtime hours than Mr. Walker. In support of this contention, defendant provides a chart listing the over-

time hours that Mr. Walker and Mr. Ganoe worked from 1/93–7/96 and from 7/96–3/97. Def.'s Reply at Exh. 3. Defendant claims that the number of overtime hours that Mr. Yania, the other structure shop supervisor, worked, is irrelevant, as Mr. Yania was a WS–13 supervisor, and thus had more responsibilities than the structure shop's WS–10 Maintenance Supervisor. Def.'s Reply at 7–8.

In response, plaintiff claims that he is entitled to additional overtime pay to reflect the hours that he would have been able to work if he had been rightfully promoted to WS–10 Maintenance Supervisor. Plaintiff estimates in his affidavit that he would have worked approximately 21 hours of overtime per pay period if he had received the promotion, rather than the approximately 16 hours per pay period that he estimates that he worked in the position that he held during the pertinent time period. Walker Aff. of 8/16/96 ¶ 8 (Def.'s Mem.Supp.Mot.S.J. at Exh. 9). In support of this contention, plaintiff points out that Mr. Yania, a WS–13 supervisor in the structure shop, worked approximately twice the overtime hours that plaintiff worked during that period. Plaintiff contends that Mr. Ganoe did not take advantage of the overtime opportunities available to supervisors in the structure shop to the extent that plaintiff would have. Plaintiff suggests that in determining how many overtime hours plaintiff would have worked had he been granted the WS–10 position, the court employ the following benchmark: the average of the number of overtime hours that the two structure-shop supervisors, Mr. Ganoe and Mr. Yania, worked during this time period.

In support of his position, plaintiff recently filed the Declaration of Terry L. Hook, who worked as a WS–10 maintenance supervisor from 1989 until mid–1996. See Hook Decl. ¶ 1. In his Declaration, Mr. Hook states that he worked with the structure shop on a number of occasions and was able to determine the extent of the overtime opportunities available to supervisors at the structure shop. See id. ¶¶ 3–4. Mr. Hook further states that he has known plaintiff since 1992; that he worked with plaintiff in 1996; that plaintiff has always worked as much overtime as has been available to him; and that plaintiff did not have the same overtime opportunities prior to his promotion that he would have had as a WS–10 supervisor in the structure shop. See id. ¶ 4. Mr. Hook also alleges that Mr. Ganoe, the selectee, chose not to work much overtime because he had an outside roofing business. See id. ¶ 5. Mr. Hook states that Mr. Yania's overtime hours provide evidence that such overtime was available to supervisors in the structure shop, and would have been available to plaintiff had he been made a structure shop supervisor. See id.

In response to the Hook Declaration, defendant filed the Declaration of Eston Ganoe, the selectee. See Notice of Filing, Jan. 4, 2000, and attached Declaration. In his Declaration, Mr. Ganoe states that when he was a supervisor of the structure shop, he "followed the general policy of the Public Works Center not to work overtime unless it was necessary" and "worked a proper amount of overtime." Ganoe Decl. ¶ 2. Mr. Ganoe disputes Mr. Hook's statement that the structure shop generated a great deal of overtime during the period after Mr. Ganoe was selected for the WS–10 position. See id. ¶ 5. Mr. Ganoe denies that he ever owned, or was employed by, a roofing business. See id. ¶ 3. Mr. Ganoe further states that the overtime opportunities available to Mr. Yania were not available to him. See id. ¶ 6.

It is clear from the foregoing that there are genuine issues of material fact that preclude summary judgment on the issue whether plaintiff has been compensated for the overtime that he would have worked during this time period had he not been discriminatorily denied the WS–10 position. Thus, the court will deny defendant's motion for summary judgment with respect to back pay and refer this case to a United States Magistrate Judge for a de-

termination whether plaintiff has been compensated for all of the overtime hours that he would have worked had he been granted the WS–10 position in 1993.[10] In making this determination, the Magistrate Judge should first take such evidence as is necessary to resolve the question whether the number of overtime hours that Mr. Ganoe worked is an adequate benchmark for the number of overtime hours that plaintiff would have worked. Specifically, the Magistrate Judge is to determine whether Mr. Ganoe took reasonable advantage of the overtime available to him as a WS–10 supervisor in the structure shop or instead acted in accordance with a personal preference—whether due to a side job or any other factors—not to work much overtime.

If the Magistrate Judge determines that Mr. Ganoe's hours are an adequate benchmark, defendant should provide to the Magistrate Judge an accurate accounting of the overtime hours that plaintiff and Mr. Ganoe each worked from September 19, 1993 to May 30, 1996.[11] If plaintiff worked more overtime than Mr. Ganoe, defendant is not to be held liable for additional back pay. If Mr. Ganoe worked more overtime than plaintiff, plaintiff is to be compensated at the then-applicable WS–10 rate for the additional hours of overtime that Mr. Ganoe worked.

If the Magistrate Judge determines that the amount of overtime that Mr. Ganoe worked is not an adequate benchmark for the amount of overtime that plaintiff would have worked, the Magistrate Judge is to determine the average number of overtime hours worked by all supervisors in the structure shop from September 19, 1993 to May 30, 1996. If this number exceeds the number of hours of overtime that plaintiff actually worked, plaintiff is to be awarded the additional hours' overtime pay at the then-applicable WS–10 rate. If plaintiff actually worked more overtime than the average structure shop supervisor, plaintiff is not to be awarded any additional back pay.

## 2. April 1, 1996 to November 10, 1998

The court finds that there are three benchmarks that the Magistrate Judge should use in determining whether plaintiff is entitled to additional overtime pay for this time period: (1) the number of hours of overtime plaintiff actually worked; (2) the number of hours of overtime that Mr. Ganoe worked; and (3) the average number of hours of overtime that WS–10 supervisors in the Code 580 Crew worked.[12] Defendant is to submit to the Magistrate Judge an accounting of these hours. If the number of hours of overtime that plaintiff actually worked is greater than the number of hours of overtime that Mr. Ganoe or the average WS–10 supervisor in the Code 580 Crew worked, plaintiff is entitled to no additional compensation. If not, plaintiff is entitled to be compensated at the then-applicable rate for the additional overtime hours that Mr. Ganoe worked, if Mr. Ganoe worked the greatest number of hours; or the additional overtime hours that the average WS–10 supervisor in the Code 580 Crew worked, if that benchmark yields the greatest number of hours.

### III. Conclusion

For the foregoing reasons, it is this 10th day of March, 2000, hereby

---

10. The court will also refer the case to a Magistrate Judge for a determination of the amount of attorney's fees due to plaintiff.

11. The chart listing the overtime hours that Mr. Walker and Mr. Ganoe worked from 1/93–7/96 and from 7/96–3/97 is overinclusive. *See* Def.'s Reply at Exh. 3. Defendant is to provide accurate figures to the Magistrate Judge that reflect the actual amount of over-

time that Mr. Walker and Mr. Ganoe worked from 9/19/93–3/30/96.

12. The court finds that it is appropriate to use this benchmark because it has determined that a WS–10 position with the Code 580 Crew is substantially similar to the WS–10 position that plaintiff was discriminatorily denied. *See* Civ.A. No. 97–217(HHK) (Mem. and Order filed Nov. 30, 1999).

**ORDERED** that defendant's motion for summary judgment on the issue of back pay is denied; and it is further

**ORDERED,** pursuant to Rule 72.2(a) of the Rules of the United States District Court for the District of Columbia, that the back-pay issue is referred to a United States Magistrate Judge for resolution in accordance with this memorandum; and it is further

**ORDERED,** pursuant to Rule 72.3(a)(5) of the Rules of the United States District Court for the District of Columbia, that the attorney's fees issue is referred to a United States Magistrate Judge for his/her determination.