**D. Rebecca WOLFF, Appellant,**

v.

**WASHINGTON HOSPITAL CENTER, Appellee.**

**No. 06–CV–960.**

District of Columbia Court of Appeals.

Argued Dec. 3, 2007.
Decided Dec. 20, 2007.

Gabriel A. Assaad, with whom Barry J. Nace, Washington, DC, was on the brief, for appellant.

Joan F. Brault, with whom Stuart N. Herschfeld, Rockville, MD, and Bradford J. Roegee, were on the brief, for appellee.

Before REID and GLICKMAN, Associate Judges, and STEADMAN, Senior Judge.

REID, Associate Judge:

During a jury trial in this wrongful death case, the trial court denied the motion of appellant, D. Rebecca Wolff, to strike expert testimony presented by the nursing expert of appellee, the Washington Hospital Center ("the hospital"). The jury rendered a verdict in favor of the hospital, and the trial court later denied Ms. Wolff's motion for a new trial. She claims trial court error. We affirm the judgment of the trial court.

## FACTUAL SUMMARY

The record shows that Ms. Wolff's husband underwent successful cardiac bypass surgery on May 10, 2001. He developed complications later and doctors performed two additional surgeries relating to the separation of the surgical incision. After the second additional surgery, the hospital placed Mr. Wolff in a BariAir bed which is designed to prevent and treat pressure sores or ulcers. Ms. Wolff's nursing expert, Sheryl Gilson, testified, in part, that the national standard of care calls for patients "to be turned at least every two hours" manually and that the hospital failed to meet that standard. Nurse Gilson stated that even if the BariAir bed is used, the patient still has to be turned. She acknowledged that a BariAir bed can be programmed for continual rotation and that it is designed to prevent and treat pressure ulcers. Nurse Gilson was unable to cite any literature requiring that a patient be turned manually while on a BariAir bed.

The hospital's nursing expert, Dr. Catherine Ratliff, stated at trial that the hospital complied with the national standard of care by using the BariAir bed and mattress which "is designed for the prevention and treatment of pressure ulcers," and which can be "programmed for continuous rotation." Nurse Ratliff asserted that the hospital had complied with the national standards of care in 2001, including those concerning the turning of Mr. Wolff. She further testified that even if the hospital had turned Mr. Wolff manually every two hours, he would have developed pressure sores on his sacrum due to his "co-morbidities," that is, "diseases such as diabetes ... that affect [the] ability to heal." And, she maintained that under "[t]he national

standards you would not want to be aggressive in turning and mobilizing [Mr. Wolff] with the risk of doing some cardiac damage." During her earlier deposition, Nurse Ratliff declared that to prevent pressure ulcers, a patient should be turned and repositioned frequently, but that "[t]here's no research out there to determine a maximum or minimum time for repositioning," and no national standard of care with respect to frequency. However, she stated that "[o]ften[ ] [in the literature] you'll see quoted every two to four hours, but there's no research to ba[ck] that up." At trial, Nurse Ratliff said she had misunderstood the deposition question and that "[t]here is a national standard of care for turning and repositioning a patient"; that "[t]he nursing standard of practice speaks to turning and repositioning the patient every two to four hours." During her deposition testimony, the hospital's counsel asked Nurse Ratliff three pertinent questions concerning the BariAir bed and the turning of Mr. Wolff: (1) "Based upon the documentation of the use of the rotational mattresses and the repositioning by the nursing staff, did the nurses and nursing staff comply with the standards of care that is [sic] necessary to attempt to prevent the formation of pressure sores-pressure ulcers"; (2) "From what you saw documented in terms of the nursing turning of the patient, was that reasonable and appropriate"; and (3) "Was that also within the standard of care?" Nurse Ratliff responded, "yes" to each of these questions.

Prior to his cross-examination of Nurse Ratliff, Ms. Wolff's counsel moved to strike most of her direct examination testimony. In support of his motion, counsel maintained: "She's not established what the standard of care is with regard to frequency of turning . . . , she was familiar with it, but she never established what is was." The trial court disagreed and denied the motion.

After the jury verdict in favor of the hospital, Ms. Wolff filed a motion for a new trial pursuant to Super. Ct. Civ. R. 59,[1] asserting, in part, that "Defendant Washington Hospital Center['s] only nursing expert, Catherine Ratliff, RN, testified [during her deposition] there is no standard of care, and therefore [she] should have been precluded from testifying whether or not Washington Hospital Center complied with the standard of care." Ms. Wolff further asserted: "To allow Nurse Ratliff to testify at trial that in her opinion [the hospital's] nurses complied with the standard of care with respect to the turning of patients was a surprise to the Plaintiff." The trial court found "no merit to the allegations made by [Ms. Wolff] concerning Dr. Ratliff, who plainly qualified as an expert, and who did testify at trial, *inter alia*, that the Washington Hospital Center's use of the BariAir bed complied with the national standard of care."

### ANALYSIS

Ms. Wolff contends that "[t]he trial court erred in allowing Nurse Ratliff . . . to testify regarding the nursing standard of care with respect to turning patients"

1. Super. Ct. Civ. R. 59 provides in pertinent part:
      (a) *Grounds.* A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the

courts of the United States or of the District of Columbia;

\* \* \*

   (e) *Motion to alter or amend judgment.* Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

because she said at her deposition "that she could not and would not offer opinions on the standard of care in turning a patient [since] there is no national standard of care" regarding that subject. Ms. Wolff claims that the nurse's "[trial] testimony contradicted her deposition testimony and was a complete and unfair surprise to [her]," and that the hospital's "[Super. Ct. Civ.] Rule 26(b)(4) statement said nothing about testifying to the standard of care with regard to turning and rotating a patient." Ms. Wolff also dismisses Nurse Ratliff's claim that she misunderstood the deposition question concerning the standard of care, and further urges that "[t]he trial court erroneously ruled that this testimony only went to credibility."

■■■ In reviewing Ms. Wolff's contentions on appeal, we are guided by what the court said in *Miller v. Avirom*, 127 U.S.App. D.C. 367, 384 F.2d 319 (1967):

> In our jurisprudential system, trial and appellate processes are synchronized in contemplation that review will normally be confined to matters appropriately submitted for determination in the court of first resort. Questions not properly raised and preserved during the proceedings under examination, and points not asserted with sufficient precision to indicate distinctly the party's thesis, will normally be spurned on appeal.

*Id.* at 369–70, 384 F.2d at 321–22 (footnotes omitted). "The rationale for requiring a specific objection is to allow the trial judge an opportunity to correct [any] mistake as well as to allow the [opposing party] an opportunity to [address or] to present evidence on the issue raised." *Adams v. United States*, 302 A.2d 232, 234 (D.C.1973) (citations omitted). Furthermore, "the trial court has broad latitude in ruling on a motion for a new trial," and has "the power and [the] duty to grant a new

trial … if for any reason or combination of reasons justice would miscarry if [the verdict] were allowed to stand." *Scott v. Crestar Fin. Corp.*, 928 A.2d 680, 687 (D.C. 2007) (quoting *Faggins v. Fischer*, 853 A.2d 132, 140 (D.C.2004), and *Fisher v. Best*, 661 A.2d 1095, 1098 (D.C.1995) (internal quotation marks and emphasis omitted)); *see also Queen v. D.C. Transit Sys., Inc.*, 364 A.2d 145, 148 (D.C.1976) (under Rule 59(a), "[t]he trial court enjoys a broad discretion when granting or denying a motion for a new trial") (citations omitted); *Dist. No. 1–Pacific Coast Dist., v. Travelers Cas.*, 782 A.2d 269, 278 (D.C.2001) (motions under Rule 59(e) are committed to the trial court's broad discretion, and the rule is not "designed to enable a party to complete presenting [its] case after the court has ruled against [it]") (citation and internal quotation marks omitted). "The decision of whether to allow expert testimony is within the sound discretion of the trial court," and our review generally is for abuse of discretion. *Townsend v. Donaldson*, 933 A.2d 282, 290 (D.C.2007).

■■■ Here, as we said in *Cannon v. Igborzurkie*, 779 A.2d 887, 888 (D.C.2001), "[w]e see no good reason to make an exception to [the] general rule" that a party must make a specific objection in the trial court to provide the judge an opportunity to correct any mistake, and the opposing party a chance to address and present evidence on the alleged trial court error. In this case, the trial court never had an opportunity at trial to address the question as to whether Nurse Ratliff's testimony should have been excluded because her trial testimony not only contradicted her deposition statement that there was no national standard of care in 2001 concerning the turning of patients, but also because it constituted "a complete and unfair surprise to [Ms. Wolff]." The only rationale which counsel for Ms. Wolff articulat-

ed at trial for striking Nurse Ratliff's testimony was: "She's not established what the standard of care is with regard to frequency of turning . . ., she was familiar with it, but she never established what it . was." Although Ms. Wolff raised the purported contradiction between Nurse Ratliff's deposition and trial testimony in her motion for a new trial, it came too late in the process and gave the trial judge only one option for addressing any violation of the deposition/discovery process, that is, granting a new trial, rather than considering other trial process options such as granting a continuance or striking only a portion of the nurse's testimony. Moreover, with its "notions of due diligence," Super. Ct. Civ. R. 59(e) does not give a party license "to complete presenting [its] case after the court has ruled against [it]." *Dist. No. 1–Pacific Coast Dist., supra,* 782 A.2d at 278 (referencing 11 C. WRIGHT, A. MILLER, AND M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1, at 127–28 (1995 ed.) ("The Rule 59(e) motion may not be used to . . . raise arguments or present evidence that could have been raised prior to the entry of judgment")) (other citation and internal quotations omitted); *see also Cavalier v. Weinstein,* 80 A.2d 918, 919 (D.C.1951) ("[C]ounsel cannot be permitted to make the motion for new trial a vehicle for asserting objections retroactively or for grounding an appeal on a theory never presented during trial.") (citations and internal quotation marks omitted).

■ Furthermore, this case does not present the "exceptional circumstances" which may prompt us to consider issues not properly preserved in the trial court.

*See Oparaugo v. Watts,* 884 A.2d 63, 75 (D.C.2005). We do not see any danger that "justice would miscarry" if the verdict in favor of the hospital is allowed to stand. *Scott, supra,* 928 A.2d at 688. The testimony of Nurse Gilson, Ms. Wolff's expert, is quite similar to that of Nurse Ratliff, the hospital's expert, with respect to the turning of patients, that is, the national standard of care calls for turning a patient every two hours (Nurse Gilson) or every two to four hours (Nurse Ratliff). Moreover, both nurses testified that the BariAir bed is designed to prevent pressure sores or ulcers and that it can be programmed to rotate a patient. The main difference between the nurses centered on whether a patient has to be turned manually if the BariAir bed is used. While Nurse Gilson maintained that the patient must be turned manually with the use of a BariAir bed, she was unable to cite to any literature requiring such manual turning. And, in denying Ms. Wolff's motion for a new trial, the trial judge relied on the testimony of Nurse Ratliff that use of the BariAir bed complied with the national standard of care. Nurse Ratliff also gave testimony to this effect at her deposition.[2] In short, given the trial court's sound discretion concerning expert testimony, and its "broad latitude" in ruling on a motion for a new trial, we are satisfied that the trial court did not abuse its discretion in denying Ms. Wolff's motion for a new trial, and in refusing to strike Nurse Ratliff's testimony during the trial. *See Scott, supra,* 928 A.2d at 687 (internal quotation marks and citation omitted); *Townsend, supra,* 933 A.2d at 290.

2. It is not surprising that the trial court makes no mention of Ms. Wolff's assertion in her motion for a new trial that she was surprised by Nurse Ratliff's testimony. Ms. Wolff included a single sentence in her motion regarding surprise: "To allow Nurse Ratliff to testify at trial that in her opinion [the hospital's] nurses complied with the standard of care with respect to the turning of patients was a surprise to Plaintiff." She made none of the arguments in her motion that she makes here about "unfair surprise" and unfair prejudice.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*